UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| THOMAS BRANCH, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 2:24-cv-00005 |
| FREEDOM MORTGAGE CORPORATION, | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

After a foreclosure sale on his residence, Thomas Branch ("Branch") brought this case against Freedom Mortgage Corporation ("Freedom Mortgage"). He alleges violations of Sections 1692(e), 1692(e)(2) and (A)(5) and (10) and Section 1692f of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). Freedom Mortgage has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The motion is ripe for decision. (Doc. Nos. 32, 33, 39 and 40).

The parties correctly acknowledge that Rule 12(b)(6) requires Branch to allege facts that when construed most favorably to him state a claim that is plausible. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that Defendant is liable for the misconduct alleged." Ashcroft v Iqbal, 556 U.S. 662, 678 (2009). The parties' dispute arises from the following allegations, which the Court accepts as true.

After Branch executed a promissory note that was secured by a Deed of Trust on his residence, the mortgage holder "sold, assigned or otherwise transferred" the note to Freedom Mortgage. "Prior to the transfer of the [note] to [Freedom Mortgage] [Branch] had made all

1

payments as required under the terms of the forbearance plan." Amended Complaint Paragraph 26. (Doc. No. 27 at 5). But in February 2023 when Branch attempted to make his monthly payment, Freedom Mortgage demanded full payment of the loan balance. Amended Complaint Paragraph 27 (Doc. No. 27 at 5). Branch contacted Freedom Mortgage, which gave him three options. Branch accepted the option to "add the accumulated delinquency to the end of the loan with a lien securing same." Amended Complaint Paragraph 31 and 32. Branch says that he never received the promised paperwork and was told "he did not need to make the March or April payment," which would be included in the loan. Amended Complaint Paragraph 32. (Doc. No. 27 at 6). Branch did receive a letter dated March 23, 2023 telling him that his application was incomplete and additional documentation would be needed. Amended Complaint Paragraph 33 and Exhibit 4. (Doc. No. 27 at 6). He responded to that letter by completing the "loss mitigation packet and returned it, only to begin several months-long cycle of Branch sending the requested documents by email, and [Freedom Mortgage] then re-requesting (via mail rather than email) the documents previously sent despite [Branch] having provided the documents previously. Amended Complaint Paragraph 34. (Doc. No. 27 at 7). This back and forth, Branch alleges resulted "into a seemingly endless chain of ever-changing requests." Amended Complaint Paragraph 35 and Exhibit 5. (Doc. No. 27 at 7).

On September 28, 2023, "having not received any follow-up to his loss mitigation application," Branch emailed Freedom Mortgage. Amended Complaint Paragraph 36. (Doc. No. 27 at 7). He next received a letter dated October 16, 2023 from Freedom Mortgage that he had been approved for a trial plan but he failed to make the required payments. Amended Complaint Paragraph 37 and Exhibit 6. (Doc. No. 27 at 7). Branch alleges he never received any notice that he was approved for the trial plan. Amended Complaint Paragraph 38. (Doc. No. 27 at 7). He

further maintains that it was "unreasonable, false, deceptive, misleading, and unfair" that Freedom Mortgage did not contact him by telephone, email or his home mailing address when Freedom did not receive his acceptance of the trial plan because "it knew or should have known that" he was "anxiously awaiting a response to his loss mitigation application." Amended Complaint Paragraph 40. (Doc. No. 27 at 8)

After receiving the October 16th letter, Branch filed a complaint with the Consumer Financial Protective Bureau ("CFPB"). Amended Complaint paragraph 4-2 (Doc. No. 27 at 8). Freedom Mortgage responded to his complaint, explaining that it received Branch's loss mitigation package on July 24, 2023 and it sent him an approval letter on August 9, 2023. Amended Complaint Paragraph 43. (Doc. No. 27 at 8). In response, Branch called Freedom Mortgage on October 19, 2023 acknowledging receipt of the approval letter. (Id.) At that point, Freedom Mortgage told Branch he would need to complete a new loss mitigation plan and that it could not guarantee review prior to the foreclosure sale. Amended Complaint Paragraph 43 and Exhibit 8. (Doc. No. 27 at 8). The foreclosure sale took place on November 9, 2023. Amended Complaint Paragraph 44. (Doc. No. 27 at 9).

Branch initially sought relief under the FDCPA and the Tennessee Collective Service Act, Tenn. Code Ann. § 62-20-105(a), which requires licensure of any person engaged in any collection service business. During briefing, it became clear that Freedom Mortgage is not subject to licensure, so Branch concedes there is no violation. Freedom Mortgage's motion to dismiss will be granted on Branch's Tennessee Collective Service Act claim. Turning to the FDCPA claims. Branch claims violations of 15 U.S.C. § 1692e, (2)(A)(5) and (10) and § 1692f. The Court will analyze each alleged violation to determine if any are plausible.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Generally, the FDCPA makes it illegal for a debt collector to use "any false, deceptive or misleading representation or means in connection with the collection of any debt." Id. "Whether a debt collector's actions are false, deceptive, or misleading under 1692e is based on an objective test - whether the 'least sophisticated consumer' would be misled by Defendant's actions." Whittiker v. Deutsche Bank Nat. Trust Co., 605 F.Supp. 2d 914, 926 (N.D. Ohio 2009) (citing) Barany-Snyder v. Weiner, 539 F.3d 327, 332-33 (6th Cir. 2008) ((citing Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 329 (6th Cir. 2006))). The Sixth Circuit has added that the debt collector's statement must be materially false or misleading to violate Section 1692e. Wallace v. Washington mut. Bank, F.A., 683 F.3d 323, 326 (6th Cir. 2012). So the statement must be "technically false" and "tend to mislead or confuse the reasonable unsophisticated consumer." Wallace, 683 F. 3d at 327. In order to allege a claim under § 1692e, a plaintiff, like Branch here, must allege facts to satisfy each of the following essential elements:

1) the plaintiff must be a "consumer" as defined in 15 U.S.C. § 1692;

2) the "debt" must arise out of transactions that are "primarily for personal, family or household purposes" under 15 U.S.C. § 1692a(5);

3) the defendant must be a "debt collector" under 15 U.S.C. § 1692a(6); and

4) the defendant must have violated one of § 1692e's specific prohibitions.

Whittiker, 605 F. Supp. 2d at 926. See also Kantz v. Rubin Lublin TN, PLLC, 2017 U.S. App. LEXIS 27803 at *7 (6th Cir. March 30, 2017).

In this case, Branch alleges that Freedom Mortgage violated 1692e(2).

The false representation of

(A) the character, amount or legal status of any debt; or

> (5) The threat to take any action that can not legally be taken or that is not intended to be taken. . .
>
> (10) The use of any false representations or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Separately, Branch also alleges a violation of 15 U.S.C. § 1692f that prohibits a debt collector from "using unfair or unconscionable means to collect or attempt to collect any debt." At least one court in the Sixth Circuit has explained that this phrase is "referring to practices that are shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness," in the eyes of the least sophisticated consumer. Bostic v. Michael Andrews & Assocs, LLC, 2021 U.S. Dist. LEXIS 201294 at *17-*18 (E.D. Mich, October 19, 2021).

> Branch specifies about what he complains. He alleges:
>
> that Freedom engaged in unreasonable, false, deceptive, misleading, and unfair acts and omissions by but not limited to:
>
> - Stating that Branch had failed to send in documents as requested.
> - Failing to respond to emails regarding the payment of his mortgage.
> - Stating to the CFPB that it did not receive a complete loss mitigation package until July 24, 2023.
> - That it sent the MRA approval letter to him on August 9, 2023.
> - Stating that it would follow up on documentation requests and answer any questions you may have. *See* Exhibit 4.
> - Stating that he had defaulted on his trial plan when one was never offered or entered into.
>
> and then collecting the debt by conducting a non-judicial foreclosure. *See, e.g., generally* FAC at ¶¶ 20-48, PageID #1165-169; *see also* FAC, ¶ 55, PageID #171.

(Doc. No. 39 at 5).

The Court must determine whether any of Branch's specific acts and omissions against Freedom Mortgage constitute plausible violations of the FDCPA. The parties do not contest that Branch is a consumer, Freedom Mortgage is a debt collector and that Branch's promissory note arises from his personal residence. The parties contest only whether Freedom Mortgage engaged

5

in unlawful actions or omissions that are connected to collection of a debt. This requires the Court to assess Branch's allegations to determine if the animating purpose of any Freedom Mortgage communications were false or misleading to induce payment by Branch. <u>Grden v. Leikin Ingber & Winter PC</u>, 643 F.3d 169, 173 (6th Cir. 2011).

Branch takes issue with Freedom Mortgage's statement that Branch failed to send in documents and Freedom Mortgage stated it would follow-up on document requests and answer questions both are contained in Freedom Mortgage's March 23, 2023 letter. Exhibit 4 to the Amended Complaint (Doc. No. 27 at 6). On its face, that letter is Freedom Mortgage's response to Branch's application for loss mitigation. (Ex. 4). The letter explains what is missing from his application, how to provide or return the missing documents, where the documents can be found, how to access the documents, that he would receive a call to answer questions, the telephone to number to discuss any questions, that until his complete loss mitigation application is received he may receive default notices, and until a complete loss mitigation application is received, his obligation to make monthly payments remains and foreclosure proceedings may "commence" or "continue." Exhibit 4 at 2. The animating purpose of the March 23, 2023 letter was to inform Branch that his loss mitigation application was incomplete, what he needed to do to complete his application and the consequences to him until his loss mitigation application was completed and received by Freedom Mortgage. The letter was prompted by Branch when he requested an accommodation on his financial obligation to Freedom Mortgage. The letter clarified that until a complete loss mitigation application was received, his obligations did not change. The letter did not demand payment, list a payment due date or threaten consequences if he did not make payment on the promissory note. That the letter contained the standard disclaimer language – that Freedom Mortgage was "a debt collector attempting to collect a debt" that has been held not to automatically

6

trigger the protections of the FDCPA.  <u>Goodson v. Bank of America, N.A.</u>, 600 Fed. Appx 422, 432 ((6th Cir. 2015) citing cases).

When viewed objectively, through the lens of the least sophisticated person, the March 23, 2023 letter is not technically false, and was only about Branch's loss mitigation application.  The central purpose was not to induce payment of the loan, but the opposite, how Branch could complete his loss mitigation application to modify his payment obligations on the promissory loan.  This Court cannot conclude that the March 23, 2023 letter constitutes a plausible violation of the sections of the FDCPA Branch relies upon in this case.

Likewise, Branch's reliance on Freedom Mortgage's response to the CFPB after Branch filed a complaint does not create plausible violations of the FDCPA.  Branch criticizes Freedom Mortgage for telling the CFPB that Freedom Mortgage did not receive Branch's completed loss mitigation application until July 24, 2023 and that it send him an approval letter on August 9, 2023.  First, these statements were not directed to Branch, but to the CFPB.  Second, Freedom Mortgage made the statements to rebut Branch's claim that Freedom Mortgage intentionally withheld forbearance information from him so he would miss payments that would allow a foreclosure.  Moreover, the CFPB invited Freedom Mortgage to respond to Branch's complaint.  Amended Complaint at paragraph 43, Ex. 8.  (Doc. No. 27 at 8).  Third, Freedom Mortgage's response to the CFPB falls outside of the FDCPA.  Freedom Mortgage's response to the CFPB was not technically false and does not support plausible violations of the sections of the FDCPA relied upon by Branch.

Finally, Branch relies on his allegations that Freedom Mortgage failed to respond to his emails regarding his mortgage payments and Freedom Mortgage stated that he defaulted on his trial plan when no such plan was offered.  His Amended Complaint gives more detail and context to his argument and suggests he had two issues with Freedom Mortgage.  One that Freedom

Mortgage did not contact him by telephone or email when it did not receive a timely answer from him on the trial plan. Two, Freedom Mortgage should have affirmatively and proactively contacted him when it did not receive a response from him. Amended Complaint Paragraph 37-41. His belief that Freedom Mortgage had an affirmative duty to contact him is apparent in Paragraphs 40 and 41 of the Amended Complaint. There he alleges:

> 40. It was unreasonable, false, deceptive, misleading, and unfair for Defendant to not have contacted or followed up in any form with Mr. Branch after sending the trial plan approval letter when it knew or should have known that Mr. Branch was anxiously awaiting a response to his loss mitigation application which he had supplemented numerous times, was in frequent contact with Defendant through its published email address, and he had made all payments to the prior servicer.
> 41. Had Mr. Branch received the trial plan acceptance letter and instructions he would have made the TPP required to save his home and resume his mortgage payments as Defendant had promised he would be able to.

The Court finds no affirmative obligation imposed by the FDCPA on a debt collector to follow-up with a consumer in the manner alleged by Branch. To the contrary, the sections of the FDCPA relied upon by Branch, tell a debt collector, like Freedom Mortgage, what it cannot do. Those sections impose no mandatory affirmative obligations as alleged by Branch.

To that extent, Branch believes the nonjudicial foreclosure was illegal. He alleges no facts on how or why the foreclosure violates the FDCPA. Specifically, he points to no statements made during the non-judicial foreclosure that violate the sections of the FDCPA. As the Supreme Court explained in Obduskey v. McCarthy & Holthus LLP, 586 U.S.466, 474 (2019), while a nonjudicial foreclosure is a debt collection activity, only those communications made "in connection with [the collection of] a debt" must comply with the FDCPA. See id. at 476.

Freedom Mortgage motion will be granted and this case will be dismissed with prejudice.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR
UNITED STATES DISTRICT JUDGE